The Woonsocket Union Railroad Company, Trustees of Harris, Black & Co., v. Stephen L. Sherman.*

When the name and description of the plaintiff corporation leave no doubt of its identity, as the corporation entitled to sue the cause of action, the objection that it has not sued by its proper corporate name cannot be taken under the general issue, or by plea of *nul tiel corporation,* but only by plea in abatement for the misnomer.

A subscriber, owning property in the village of P., but not in the village of C., which villages were rival points on the route of a contemplated railroad, subscribed for shares in the stock of the road "if the road was built through the village of P." *Held,* that the condition was complied with, so that the assessments upon his stock could be collected of him, when the road was in good faith located and designed to be built through the village, and a portion of the route built, although none of the road was completed.

In a subscription to the stock of a railroad, a condition that it was not to be binding until $500,000 were subscribed to the stock of the road is, to that extent, waived by a proviso : that a section of the road, beginning at the village of W., and ending at the villages of P. or C., might be built when 2000 shares of the capital stock of the road, of which the par value was $100 each, should be subscribed.

The corporation records or minutes of the doings of the corporation, when regularly kept, are evidence, though not conclusive, of the corporate proceedings, and of all that may fairly be intended from them.

A court cannot, upon motion, increase or diminish the amount of a verdict, as designedly fixed by the jury, or for the cause, that if the facts, as they really were, had been proved to the jury, their verdict would have been different ; since this would be, not to amend a verdict, but to make one.

---

*This case was heard and determined at the September term, 1862 for the county of Providence, present Ames, C. J., and Brayton and Bullock, J. J. The report of the case was prepared by Chief Justice Ames while reporter : but, it having been loaned by him previous to his decease, and having come into the hands of the present reporter after a considerable portion of the present volume had gone to press, it is here inserted, necessarily out of its proper place.—[Reporter.

ASSUMPSIT against the defendant to recover certain instalments due from him as a subscriber for fifteen shares in the capital stock of the Woonsocket Union Railroad Company.

The writ and declaration described the plaintiffs as "The Woonsocket Union Railroad Company, a corporation created by the General Assembly of the State of Rhode Island, and united, according to the provisions of its charter, with the New York and Boston Railroad Company, a corporation created by the legislature of the State of Connecticut, and transacting business under the corporate name of said United Corporation, trustees to George Harris, of York county, in the State of Pennsylvania, William H. Black, of Lancaster county, in said State, and Matthew G. Norton, of Union county, in said State, copartners under the firm of Harris, Black & Company."

The case was tried under the general issue, and pleas of *nul tiel corporation*, at the September term of this court, 1861, by the chief justice, sitting with a jury, when it appeared that the Woonsocket Union Railroad Company was incorporated by the General Assembly of the State of Rhode Island at its August session, 1850, with authority "to locate, lay out, construct and finally complete a railroad, commencing at the state line of Massachusetts, in Cumberland, near the village of Woonsocket, in an easterly direction therefrom, passing through said village, and through the towns of Smithfield, (near the village of Slatersville,) Burrillville, and part of Glocester, near the village of Chepachet, and terminating at the state line of Connecticut; or said company may lay out, construct, and finally complete a railroad upon any intermediate portions of the above described route;" that by the charter of said company the capital stock of the same was not to exceed six hundred and fifty thousand dollars, to be divided into shares of one hundred dollars each, and that if the stock was not subscribed for, the company organized, and the location of the route filed with the Court of Common Pleas of the county within which the land proposed to be taken for the use of said railroad was situated, previous to the first day of November, A. D. 1854; or if, the stock being so subscribed for, the company organized, and the location made

as aforesaid, the corporation failed to complete the said railroad before the first day of November, A. D. 1858, the charter was to become null and void; that the union of said railroad with other railroads running east and west, was provided for by the following sections :—

" Sec. 21. The said Woonsocket Union Railroad Company is hereby authorized to unite with any railroad company which has been or may be empowered by the legislature of the state of Connecticut to construct a railroad to the westerly terminus of the railroad authorized by this act, or with any railroad company which may be or has been authorized by the state of Massachusetts to construct a railroad to the easterly terminus of the railroad authorized by this act, or with either of said companies. And where the companies shall have been so united, the stockholders of one company shall become stockholders in the other companies or company. And the companies thus united shall constitute one corporation, by such name as the united companies may adopt. And all the franchises, property, powers and privileges, granted or acquired under the authority of said states respectively, shall be held and enjoyed by the said stockholders in proportion to the number of shares or amount of property held by them respectively, in either or both of said corporations.

Sec. 22. Two or more of the directors of said united company, as is provided in the preceding section, shall at all times be an inhabitant of this state, on whom process against said company may be legally served; and said company shall be held to answer in the jurisdiction where the service is made and the process is returnable.

Sec. 23. The said company shall keep separate accounts of their expenditures in the state of Rhode Island, and other states respectively; and three commissioners shall be appointed, one by the Governor of each of said states where a portion of said railroad shall be located, to hold their offices for the term of four years, and to be reasonably compensated by said company, who shall decide what portion of all expenditures of said com-

pany, and of its receipts and profits, properly pertain to that part of said road lying in said states respectively ; and the annual report required to be made to the legislature of this state, shall be approved by said commissioners.

Sec. 24. The said company and the stockholders therein, so far as their road shall be situated in this state, shall be subject to all the duties and liabilities of the Woonsocket Union Railroad Company, created by the provisions of this act, and to the general laws of this state, to the same extent as the said Woonsocket Union Railroad Company, and the stockholders therein would have been, had the whole line of said railroad been located within the limits of this state.

Sec. 25. The provisions contained in the four preceding sections, shall not take effect until said provisions shall have been accepted by the stockholders of the corporations united respectively, at legal meetings called for that purpose.

Sec. 26. In lieu of the union provided for by the five preceding sections, said corporations may unite with any railroad company which has been or may be incorporated by the legislature of any other state or states, for the purpose of continuing said railroad westward or eastward, by leasing said railroad to said company, or by taking a lease of the railroad of said company, upon such terms and conditions as shall be agreed between them, or by any other contract or agreement duly made and entered into between said corporations."

It further appeared that an agreement for a union between the said Woonsocket Union Railroad Company, and the New York and Boston Railroad Company, a railroad company incorporated by the state of Connecticut, was executed by the directors, and subsequently ratified by the stockholders of the respective companies, and by the legislatures of the respective states, under the above provisions of the charter of the said Woonsocket Union Railroad Company, and similar provisions in the charter of the said New York and Boston Railroad Company ; and that the united company took the name of the latter company ; that the original subscription to the stock of the

Woonsocket Union Railroad Company provided, that unless $500,000 of the capital stock of said company was subscribed for, the subscriptions should not be binding ; and that less than half that sum had been subscribed for said stock ; that to this there was a proviso that the company might build a section of their road, beginning at Woonsocket and ending at Pascoag or Chepachet, when the amount of 2000 shares of the capital stock of said road had been subscribed.for ; and that the defendant subscribed for fifteen shares of the capital stock of the Woon-socket Union Railroad Company, in a subscription book under this last head, and containing the following conditions, attached to his subscription and that of others, who like him, were own-ers of property in the village of Pascoag, Burrillville :—"The undersigned subscribers are on condition that.the Union road is built through the village of Pascoag ;" that said road was lo-cated near Pascoag, across the dam in that village, and with reference to that village as a rival point on the road to Che-pachet ; and that the cuts were broken into and portions of the embankment made on that route ; but that the road had never been completed, nor was there any place of a mile, or even a half a mile in length, on that line, fitted to receive the ties. It further appeared that one of the terms of subscription to the stock of said Woonsocket Union Railroad Company was, that the company should not unite with any other railroad company unless three-fourths in amount and votes of the stockholders of the company should assent thereto in writing ; and the plaintiffs offered in evidence of such assent the record book of said com-pany, which recited that three-fourths of the stockholders in amount and votes, had assented to such union with the New York and Boston Railroad Company, which, notwithstanding the objection of the defendant, was ruled in as *prima facie* of the fact, and which, with the evidence of Edward Harris, to his belief that the company had procured such assent from the stockholders, together with a book containing the written assent of some of the stockholders of said company to such union, but not three-fourths in amount and votes, together with a power of attorney of the defendant, hereafter mentioned, constituted all

the evidence on this point.    It further appeared, that one of the conditions of the contract was, that all the subscriptions to said road, were upon condition that, before they were binding, the company should secure the right, either by contract, or from the legislatures of other states, of a railroad communication from the eastern terminus of said road to the city of Boston, and from its western terminus to some railroad that has been or may be constructed in Connecticut, communicating with New York; and the plaintiffs produced as proof that the company had obtained such right of communication from the charters of the New York and Boston Railroad Company, of the Woonsocket Union Railroad Company, and the records of the New York and Boston Railroad Company, which were admitted for that purpose, notwithstanding the objection of the defendant.    The plaintiffs also produced in evidence a power of attorney from the defendants and others, to Daniel L. Whipple, dated August 1, 1855, authorizing said Whipple to represent them in the New York and Boston Railroad Company, and vote for the union of said company with the Charles River Railroad Company ; which power also recited that the Woonsocket Union Railroad Company, and the New York and Boston Railroad Company, and their rights and interests, had been connected, united, merged and consolidated together under the authority of the states of Rhode Island and Connecticut.

At the January session, 1858, the General Assembly of Rhode Island passed the following act, entitled

"*An act concerning the New York and Boston Railroad Company.*

"*It is enacted by the General Assembly as follows :—*

"SECTION 1.    The union and merger of the Woonsocket Union Railroad Company, under the powers and privileges of its charter, with the New York and Boston Railroad Company, in Connecticut, and the subsequent union and merger of said united company with the Charles River Railroad Company in Massachusetts, forming thereby one company, under the name of the New York and Boston Railroad Company, are hereby

ratified and confirmed; and all the rights, privileges and pow-
ers of said Woonsocket Union Railroad Company, and each of
said companies, are hereby ratified and confirmed to said united
company, under said name of the New York and Boston Rail-
road Company, and the said united company shall be subject to
all the liabilities of said Woonsocket Union Railroad Company,
and of each of said companies, and provided, that such union
and merger, under the provisions of said charters, and of this
act, shall not impair the right of any creditor of either of said
corporations, but the rights and remedies of the creditors of the
several corporations shall subsist against them severally, and
against any funds or property thereof, as well as against said
united corporation.

"Sec. 2. The time for the construction of the road of said
New York and Boston Railroad Company is hereby extended
to July 1, 1862."

Similar acts of ratification and confirmation were passed by
the legislatures of Connecticut and Massachusetts respectively.

It further appeared, that the defendant's stock, by him sub-
scribed for in the capital stock of the Woonsocket Union Rail-
road Company, was duly assessed by the New York and Boston
Railroad Company, in common with other stock, after the union
of the former with the latter company, and that the defendant
paid to the New York and Boston Railroad Company the first
of those assessments; that said company, being indebted to
Messrs. Harris, Black & Co., as contractors, for work done on
the line of the Woonsocket Union Railroad Company, in secu-
rity therefor executed to that firm, on the 11th day of June,
1855, a bond for the sum of $11,022 92, payable in one year
with interest, from August 1, 1854; and on the 1st day of No-
vember, 1856, executed to said firm an assignment of sundry
claims against these stockholders, including the claim against
the defendant for his unpaid assessments on his stock,—the pro-
ceeds of the assigned property to be applied by Messrs. Harris,
Black & Co. to the payment of said bond. This suit, together
with other suits against other stockholders, was brought by said
Harris, Black & Co. against the defendant, in the name of the

Woonsocket Union Railroad Company, described as aforesaid, to enforce against him his said unpaid assessments.

At the trial, the counsel for the defendant, requested the judge presiding to instruct the jury—that, as the Woonsocket Union Railroad Company had merged in the New York and Boston Railroad Company before this suit was commenced, or any stock assessments were made, this suit could not be maintained, but the jury must find for the defendant. The judge refused to give this instruction, but instructed the jury *pro forma*, that the present suit was well brought. Said counsel also requested the judge to instruct the jury—that under the special terms of the defendant's subscription, the *actual building* of the railroad through Pascoag village was a condition precedent to the company's right to collect said subscription, which instruction the judge refused to give, but did instruct the jury, *pro forma*, that it was a sufficient compliance with this condition of said subscription, if the road was located, and in good faith designed to be built through said village. Said counsel also requested the judge to instruct the jury—that, the subscription of $500,000 to the capital stock of said Woonsocket Union Railroad Company was a condition precedent to the right of the plaintiffs to recover the assessments made on the capital stock of said company; and that the subsequent provision in the subscription book, that the company might complete certain sections of their road whenever $200,000 was subscribed to their stock, did not waive or affect the right of subscribers to refuse to withhold payment of their subscriptions until the whole $500,000 was subscribed. This instruction the judge refused to give; but charged the jury—that the subscription of $500,-000 was waived by those who signed the proviso in regard to the $200,000.

Under these rulings and instructions, the verdict having been for the plaintiffs for the sum of $639 35,—being the amount of the unpaid assessments upon the defendant's shares subscribed with interest,—

The defendant now moved for a new trial, on the ground of error in law in the same, and also because the verdict was

against evidence; the minutes of the judge presiding at the trial, being admitted as proof of what the evidence given therein was.

*Browne, with whom was William H. Potter, for the defendant.*

I.  The Woonsocket Union Railroad Company cannot maintain this suit.  It sues as an existing corporation by that name. Its charter contemplates and provides for its union with another railroad, and for its *extinction thereby.*  Charter, Sec. 21.  The plaintiff claims that a union was effected under this provision, and that the united companies constituted a corporation by the name of the New York and Boston Railroad Company.  By the union *all* the *powers, privileges and franchises* of the Woon= socket Union Railroad Company passed to the New York and Boston Railroad Company.  The corporation formed by the union of the two corporations is as separate and distinct from either of the two, as they two, before the union, were from each other.  The language of the charter is,—"the two corporations united shall constitute one corporation, by such name," &c. Again—the plaintiff corporation, while a corporation, never made their assessments.  Defendant could not, therefore, be liable for an assessment, *it,* the plaintiff corporation, never made. These assessments were made by *the corporation* constituted by the union of the two.  If not united, then as the plaintiff corporation retained its corporate existence and never made these assessments, *it* certainly cannot sue for them.  The plaintiff corporation, not some other corporation, must have the power to assess, and must have, in fact, made these assessments on the defendant, in order to make defendant liable therefor to the plaintiff in this suit.

II.  *The subscription is a conditional subscription.*  It contains a condition, precedent, which has not been performed or complied with by the plaintiff.  It is this: The undersigned subscribers are on condition "that the union road is built through the village of Pascoag."  The defendant was the owner of a manufacturing establishment in Pascoag.  He did not want the stock, *as stock,* for its dividend.  He wanted the railroad *built,* and built *there,* as an appurtenance to an improvement upon his

mill estate. This was the *sole motive*, and the *entire consideration* to the defendant for his subscription. Both parties so under stood it. The contract so expresses it—*this is the contract.* The conditions which must be performed by a corporation before, and as the basis of a suit for assessments, may be contained in the charter or in the subscription itself. Anything which by the express provisions of the charter or general laws is made a condition to be performed on the part of the company or its agents, before, and as foundation of right to make calls for subscriptions, or where a thing is required to be done before calls can be made, and is an important element in the consideration in the agreement to take stock, should ordinarily be regarded as *condition precedent.* Redfield on R. R. pp. 77 & 8. It is an essential condition to making calls in these companies, where the number of shares and the amount of capital is fixed, that the whole stock shall be subscribed before any call can lawfully be made. Ibid, p. 79. *Worcester* & *Nashua R. R. Co.* v. *Hinds,* 8 Cush. 110. *Stoneham Branch R. R.* v. *Gould,* 2 Gray, 277. *Salem Mill Dam Corp.* v. *Ropes,* 9 Pick., 187. *Littleton Man'fg. Co.* v. *Parker,* 14 N. H., 543. *Contocook Valley R. R.* v. *Barker,* 32 N. H., 363. And where a charter of a railroad company requires their stock to consist of a certain number of shares, assessments cannot be made before the required number is taken, and in such case *conditional subscriptions* are not reckoned. Redfield on R. R. p. 80. It is no subscription where the subscriber agrees to pay share for share in other stock of equal nominal, though not actual value. *Cabot & West Springfield Bridge Co.* v. *Chapin,* 6 Cushing, 50. See· as to subscriptions of insolvent persons, 9 Pick. 187—as above. When charter requires stock to consist of not less than so many shares, assessments made before the required number are taken are illegal and cannot be collected. *Old Town & Lincoln R. R. Co.,* v. *Veasey,* 39 Me., 571. If commissioner takes check of a subscriber, it is no subscription. *Crooker* v. *Crane,* 23 Wend., 211 And where charter requires a given number of shares, and after subscription of a number of shares, the number is lessened, prior subscribers are not liable. *Penobscot & Kennebec R. R.* v. *Dunn*

39 Me., 587. Fundamental alteration of charter releases a prior subscriber. Redfield, 191, as where so altered as to allow road to stop short of terminus. *Winter* v. *Muscogee R. R. Co.*, 11 Ga., 438. So, when so chartered for railroad company, altered so as to authorize it to buy steamboats. *Hartford & New Haven R. R. Co.* v. *Croswell*, 5 Hill, 383. And if a majority of a railroad company obtain an alteration of their charter which is fundamental, *as* to enable them to build an extension of their road, any stockholder who has not assented to the alteration may restrain the company, by injunction, from applying the funds of the original organization to the extension. *Stevens* v. *Rutland & Burlington R. R. Co.*, 1 Law Register, 154. *Conditional Subscriptions.*—When subscriptions are made upon the express condition that the road shall go in a particular place, the performance of such condition is commonly regarded as indispensable to the liability of the subscribers, the same as in other contracts. But an alteration in the line of the road which did not affect the interest of the subscriber, will not absolve him from his subscription. Redfield, p. 85. *Baltimore* v. *Alton & Sangammon R. R.*, 13 Ill., 514. See 22 Conn. 435. The alteration in charter of line of road, to release a subscriber, must be one which removes the prevailing motive for the subscription, &c. Redfield, p. 95. *Buffalo, Corning & N. Y. R. R.* v. *Pottle*, 23 N. Y., 21. *Hester* v. *Memphis & Charleston R. R.* 32 Miss., 378. So where agents of railroad represented to subscriber that the railroad would run near or through his plantation, and it did not. *Niles* v. *Plank Road Co.*, 30 Ala., 92. *O'Neal* v. *King*, 3 Jour..(N. C.) 517.

III. The subscription of $500,000 capital stock of the Woonsocket Union Railroad Company was a condition precedent to plaintiff's right to make or receive assessments made on the capital stock. The subsequent provision that the company might complete sections of their road whenever $200,000 was subscribed, did not waive or affect the right of subscribers to refuse and withhold payment of their subscriptions till the whole $500,000 was subscribed. The $500,000 was not subscribed—see subscription books.

IV.  This suit being between the Woonsocket Union Railroad Company and one of its subscribers, the record book of the doings of the directors and stockholders of the company was not admissible evidence (being objected to) to prove by their recitals that three-fourths of the stockholders in amount and votes, assented in writing to the union of the Woonsocket Company with the New York and Boston Company; and also, in the absence of all other written evidence of the written assent of the stockholders to that union, except the record book of Mr. Edward Harris, and containing the signatures of certain of the stockholders to said union, this book was the only evidence, on that point, that the jury could consider.  And it appearing by said book that three-fourths of the stockholders in amount and votes did not sign therein, the jury must find for defendant.

V.  This being a suit between the Woonsocket Union Railroad Company, and one of the subscribers, for its stocks, the book of records of the doings of the stockholders and directors of the Woonsocket Union Railroad Company and the New York and Boston Railroad Company were not admissible to prove that it had secured the right of way to Boston and New York.  No other evidence was submitted on this point. E. Harris' testimony.  There was not only no written evidence that three-fourths of the stockholders of the Woonsocket Union Railroad Company assented to the union, but it did appear that three-fourths did not so assent.  This was in the small memorandum book produced by Edward Harris.

*T. A. Jenckes for the plaintiff.*

I.  The action is well brought.  1. The defendant is the promisor; the Woonsocket Union Railroad Company is the promisee, in the contract declared upon.  The succession of the New York and Boston Railroad Company to the benefit of the promise is accurately stated in the writ, and averred in the declaration; and also the rights of Harris, Black & Co. as assignees of the New York and Boston Railroad Company.  The plaintiffs are therefore accurately described, and the cause of action correctly stated.  The rule with regard to corporations, either

as plaintiffs or defendants is, that the identity of the parties to the contract sued upon, should be sufficiently averred in the pleadings, and made apparent in proof. Angell & Ames § 234, and cases there cited. 2. The exception of the defendant is in fact an objection on account of a misnomer of the plaintiff corporation in the writ and declaration. But the identity of the corporation being sufficiently averred in the pleadings, this objection of misnomer comes too late. It should have been taken by plea in abatement. Angell & Ames, § 647, § 650. 3. The name of the New York and Boston Railroad Company being used as plaintiff, as well as that of the Woonsocket Union Railroad Company, the latter name may be rejected as surplusage, or withdrawn by amendment. Angell & Ames, § 651. 4. The circumstances of this case, as shown in proof at the trial, are such as ought to preclude the defendant from setting up or making any technical points in defence. Angell & Ames, § 635. This form has been adopted in similar suits in this court. See Providence and Plainfield Railroad Company's suits on files.

II. The actual building of the railroad through or near the village of Pascoag, was not a condition precedent to the collection of the subscription money. The road could not have been built until the money subscribed for the stock had been paid. 15 B. Monroe, 218. *McMillan* v. *Maysville & Lexington R. R. Co.*, 41 Maine, 512. *Penobscot R. R. Co.* v. *Daniel White*, 4 Jones, N. Carolina Reports, 340. *N. Carolina R. R. Co.* v. *James T. Leach.*

III. The condition that $500,000 should be subscribed before any assessment should be made upon the stock subscribed for, was waived by the agreement that the branch road to Pascoag should be built when $200,000 of the stock should be subscribed for. This waiver appears from the language of the instrument, and is also proved by the acquiescence of the defendant in the right of the corporation to assess, and the payment by him of several of the assessments.

IV. The record books and minutes of the corporation were properly admitted as evidence *prima facie*, but not conclusive, that three-fourths of the corporators were present at the meet-

ing of the corporation which authorized the record of the two corporations. Angell & Ames on Corp, §§ 513, 514. So also the testimony of Mr. Harris. See 41 Maine, 512, ante.

V. So, also, the record books of the corporation were admissible for the purpose of showing that the right of way had been secured as required. See Angell & Ames on Corp., as above cited.

VI. Judgment should be entered upon the verdict.

Subsequently, Mr. Jenckes referred the court to the case of the *Ohio & Mississippi R. R. Co.* v. *Wheeler*, 1 Black's. (Sup. Ct. U. S.) R. 286—published since the hearing of the motion— to the point of the distinct and separate character of corporations, and of their continued existence in that character, for the purpose of being parties to a suit, notwithstanding their union or merger under legislative sanction of two or more states which had respectively incorporated them.

AMES, C. J. The first objection made in this case to the plaintiffs retaining their verdict is, that the suit is brought in the name of the Woonsocket Union Railroad Company, instead of the name of the New York and Boston Railroad Company, in which last corporation, it is said, that the former is merged and lost. The objection is not taken by plea of misnomer in abatement, but by plea of *nul tiel corporation*, and under the general issue, so that the question is, whether the description of the plaintiff corporation in the writ and declaration sufficiently identifies it with an existing corporation entitled to sue the cause of action, and not whether that corporation sues in its proper name. The description of the plaintiff in the writ and declaration is,—" The Woonsocket Union Railroad Company, a corporation created by the General Assembly of the State of Rhode Island, and united according to the provisions of its charter with the New York and Boston Railroad Company, a corporation created by the Legislature of the State of Connecticut, and transacting business under the corporate name of said united corporation, trustees," &c. No language could more accurately describe or clearly identify the corporation entitled to sue in this case. Such a corporation, and by the name given,

was created by this state, and was authorized by its charter to
unite, and did unite, with the New York and Boston Railroad
Corporation, incorporated by the state of Connecticut, and has
since transacted business with that corporation, as a united cor-
poration, under the corporate name thereof. Without deciding
whether a plea of misnomer, in abatement, would not have pre-
vailed, on the technical ground, that by the act of incorpora-
tion, the proper name in which the plaintiff should sue, since
the union, is, " The New York and Boston Railroad Company,"
we cannot say that no such corporation as that named and de-
scribed, did exist when this suit was brought, and hence this
objection falls to the ground.

Another objection to the verdict is, that the judge who pre-
sided at the trial refused to instruct the jury, that the calls upon
the defendant's subscription for stock, could not, according to
the condition of the same, be collected until the union railroad
was actually built, or completed, through the village of Pas-
coag. Such an interpretation is, no doubt, the *literal* interpre-
tation of the subscription, but not the reasonable one. There
were two routes for this railroad in contemplation, one by the
way of Pascoag, where the defendant did, and one by the way
of Chepachet, where he did not, own property. We understand
his subscription to mean, " if the road is built, in the sense of
' to be built,' by the former route, where it will benefit me, I
will take fifteen shares ; if by the other route, where I shall re-
ceive no benefit from it, I will not subscribe at all." The proof
was, and so the jury have found, under the instructions of the
court, that the road was in good faith located and designed to
be built, and in part built, on the Pascoag line ; and we must
hold this to be a fulfillment of the condition of the defendant's
subscription, unless, indeed, we suppose that the company was
not to have the defendant's aid to do that, which he subscribed
to enable them to do. The suggestion, that the corporation was
to build the road on this line on credit, so far as the subscrip-
tions of the defendant and of others on like condition were
concerned, and then, only if the road was completed to have
the aid of those subscriptions to pay their debt, is unreasona-

ble towards those engaged in the same enterprize, and unjust to the contractors on the road, and cannot, as an interpretation of this subscription, be entertained by us.

For the same reason we approve the ruling of the judge, that the proviso in the subscription, that a section of the road might be built, beginning at Woonsocket and ending at Pascoag or Chepachet, when 2000 shares of the capital stock should be subscribed, was a waiver to that extent, of the general condition, that the subscriptions were not to be binding until $500,000 were subscribed to said stock. Upon any other construction the proviso would be senseless, in view of the only purpose it was inserted to accomplish.

With regard to the propriety of admitting the corporation records, or minutes of the doings of the Woonsocket Union Railroad Company, and of the New York and Boston Railroad Company,—regularly kept as such,—for the purpose of proving the corporate proceedings, and all that may be fairly intended from them, we suppose that there can be no doubt. The evidence derivable from them is never conclusive, and may not, in some cases, be sufficient for the purpose for which they are introduced. All that is matter for the jury ; but upon looking into the evidence in this case, bearing upon the points to which the evidence from this source was deemed insufficient, we see enough in the conduct of the defendant himself, coupled with that coming from other sources, to induce us to refuse him a new trial, upon the ground that this verdict was against the evidence.

*New trial refused, and judgment ordered to be entered upon the verdict.*

At the trial of the case, it appeared, that the defendant had paid fourteen assessments on his shares, of five per cent. each, for which he produced the receipts of Lebbeas Gaskill, an agent of the corporation, appointed to collect assessments of subscribers, for six of which assessments, amounting to the sum of $450, the defendant, on the sixth day of May, 1854, gave his promissory note, payable to the corporation in four months from

date, which Gaskill turned over to Stokes, the then treasurer of the corporation. The defendant swore that he had never paid this note ; but the note not being produced, or accounted for, the amount of the six assessments covered by it, were treated as paid, and did not enter into the verdict.

*Jenckes, for the plaintiff*, now moved the court to increase the verdict by the amount of the note, reading an affidavit that it had been lost, and offering security to the defendant against any claim that might be made upon it.

*Van Slyck, with whom was W. H. Potter*, opposed the motion.

AMES, C. J. The court has no power to increase or diminish the amount of the debt, or damages found by a jury in their verdict ; since this would be a power to make, rather than to amend a verdict. 1 Bac. Abc. Amendment, D. 5. The reservation of such a power at the trial, or the exercise of it in the way of imposing a condition upon the grant, or refusal of a new trial, are supported only by the consent or acceptance of the parties.

As the case at bar stood before the jury, they rightly, and without objection on the part of the plaintiffs, excluded the six calls covered by the note, in computing the amount of their verdict. If, as the facts really were, and can now be proved, the plaintiffs, through ignorance of them, and not by their own negligence, have suffered an injury in this matter, certainly, their remedy is not by such a motion as this.

The motion must be dismissed, with costs.